Mark W. Gifford
P.O. Box 2508
Casper, Wyoming 82602
(307) 265-3265
Fax:   (307) 265-3266
mark@giffordbrinkerhoff.com

Brian J. Hunter
McKellar, Tiedeken & Scoggin, LLC
702 Randall Avenue
P.O. Box 748
Cheyenne, Wyoming  82003
bhunter@mtslegal.net
Attorneys for Plaintiffs/Counter-defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| R&S WELL SERVICE, INC., a Wyoming corporation, and MARKEL INSURANCE COMPANY, a Virginia corporation,<br><br>　　　　Plaintiffs/Counter-defendants,<br><br>vs.<br><br>BRIAN THIESSEN, individually, and THIESSEN FARMS, a foreign corporation,<br><br>　　　　Defendant/Counter-plaintiff. | Case No. 09-CV-72-B |

**PLAINTIFF/COUNTER-DEFENDANT'S MOTION FOR NEW TRIAL OR TO ALTER OR AMEND JUDGMENT**

COME NOW Plaintiffs/Counter-defendants, R&S Well Service, Inc. ("R&S") and Markel Insurance Company ("Markel"), by and through their counsel, Mark W. Gifford Brian J. Hunter, and move pursuant to Rule 59, F.R.Civ.P. for new trial, or in the alternative, to alter or amend the judgment entered herein July 22, 2010.

## Introduction

This case arose out of the November 9, 2007 collision between an R&S Well Service workover rig and a tractor-trailer being driven by Defendant Thiessen. Both vehicles were north-bound on Highway 59, with the R&S workover rig in the lead, followed by an R&S crew pickup truck. The collision occurred when Thiessen attempted to pass the R&S vehicles as the R&S workover rig was executing a left-hand turn onto a service road.

Each side asserted a claim against the other. The jury apportioned 80% of the fault to R&S and 20% to Thiessen. Judgment was entered in favor of Thiessen for 80% of the cost of repairing his tractor-trailer, or $38,618.42.

In opening statement, Thiessen's counsel told the jury the R&S workover rig was "well off the roadway and onto the shoulder" when it started its turn, Tr. Vol. 1(b), p. 10, and told the jury the location off-the-highway location of the R&S workover rig was "the key to the case." Id., pp. 10, 13.

At trial, Thiessen conceded that his testimony about the R&S workover rig being off the highway before it started to make its left-hand turn – the core of Thiessen's liability theory against R&S – could not be correct. There was no evidence upon which the jury could have made an apportionment of 80% (or any other percentage) of fault to R&S. The verdict is against the weight of the evidence and must be set aside.

<u>Standard applicable to Rule 59 motion</u>

Pertinent to the instant motion, Rule 59 provides a mechanism for new trials where the verdict is against the weight of the evidence, and a new trial is therefore necessary to prevent a miscarriage of justice. *Byrd v. Blue Ridge Rural Elec. Co-op, Inc.*, 356 U.S. 525, 540, 78 S.Ct. 893, 902, 2 L.Ed. 953 (1958); see also *Craft v. Yellow Freight System, Inc.*, 139 F.3d 911 (10th Cir. 1998). Such a motion is entrusted to the sound discretion of the trial judge, *Cholier, Inc. v. Torch Energy Advisors, Inc.*, 83 F.3d 431 (10th Cir. 1996), who is not bound to view the evidence in the light most favorable to the verdict winner, and may reweigh the evidence, accepting or rejecting evidence, witnesses, and other proof that the jury considered. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980); *Shumpert v. Johnson*, 621 F.Supp.2d 387, 395 (N.D.Miss. 2009); *Funai Elec. Co. v. Daewoo Elecs.*, 593 F.Supp.2d 1088, 1093 (N.D.Cal. 2009).

> Upon the Rule 59 motion of the party against whom a verdict has been returned, the district court has "the duty ... to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence,

> where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Murphy v. City of Long Beach,* 914 F.2d 183, 187 (9th Cir.1990) (quoting *Moist Cold Refrigerator Co. v. Lou Johnson Co.,* 249 F.2d 246, 256 (9th Cir.1957)).
>
> Historically recognized grounds include, but are not limited to, claims "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940). We have held that "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods.,* 212 F.3d 493, 510 n. 15 (9th Cir.2000).

*Molski v. M.J. Cable, Inc.*, 481 F.3d 724 (9th Cir. 2007).

<u>Review of testimony</u>

Three eyewitnesses to the collision testified at trial. Two were R&S employees. Aaron Wolfe was a passenger in the R&S crew pickup that was following the R&S workover rig. He testified that he observed the R&S workover rig slow down and activate its left-hand turn signal before turning. Tr. Vol. 1(b), p. 26. He denied that the R&S workover rig pulled to the right before beginning its left-hand turn. Id., p. 27.

Eric Rouse was the driver of the R&S workover rig. He testified that he began to decelerate in order to make the left-hand turn, and activated the left-hand turn indicator as

he did so. Tr. Vol. II, p. 116. He denied that the R&S workover rig pulled to the right before beginning the left-hand turn. Id., p. 118.

Thiessen testified to the following:

1. He observed the R&S workover rig and crew pickup truck from a distance of a half-mile, and both vehicles were entirely off the travel lane of the highway. Id., p. 72. The R&S workover rig was entirely outside the fog line. Id., p. 103.

2. When Thiessen observed the R&S vehicles from a half-mile away, he was travelling at a speed of 65 mph and immediately started to decelerate. Id.

3. By the time he got to within 200 to 300 feet of the R&S vehicles, Thiessen was travelling 35 mph. At that point, he saw the driver of the R&S crew pickup put his left arm out the window, noticed the left-hand turn indicator operating on the R&S crew pickup, and noticed the R&S workover rig begin to make a left-hand turn. Id., pp. 72-3.

4. Thiessen conceded that, given the time, speeds and distances to which he testified, he had time to evade a collision with the workover rig. Id., p. 75.

On cross, Thiessen testified as follows:

Q. So you'll agree with me, won't you, that if your recollection of the events is correct, it would have taken 10 seconds or more for that boom [i.e., the forward-most portion of the R&S workover rig] to get from a point on or outside of the fog line to a point 30 feet away?

5

A. Yes, that's correct.

Q. All right. And if you were really going 35 miles an hour when you started to head to the ditch and hit your brakes, at 35 miles an hour you were going 51 feet per second, right?

A. That's the calculation that's based on the two to 300 feet –

Q. Right.

A. -- or the miles per hour?

Q. Right. And you're sticking by that estimate, right?

A. Correct.

Q. So if the rig started to move – and you agree with me that it would have taken about 10 seconds for the [workover] rig to get from a point on or outside the fog line to the point of the collision. And you're moving 50 feet per second, and it would take you 4 seconds to cover that distance – I'm sorry, 35 – 50 feet per second, 35 miles an hour. Can you help us clear up the discrepancy?

A. Well, I don't – I think 10 seconds is a long time, but based on the mathematical equations that you've got here, with the information I've given you, I agree that the numbers, the feet per second, the feet per minute, and all of that, but I'm not sure whether or not I'm correct in my estimations.

Id., pp. 104-105.

The only other witness who testified regarding the facts of the accident was the responding highway patrolman, Trooper Parkin. Though Wyoming Highway Patrol protocol required Trooper Parkin to take measurements, he took none. Id., p. 167. His

camera was broken so he took no photographs. Id., p. 157. His spray paint was frozen, so he made no markings. Id., p. 168. He failed to elicit any of the pertinent information to which Thiessen testified at trial, including (1) that Thiessen saw the R&S vehicles from a distance of a half-mile away; (2) that when Thiessen saw the R&S vehicles, they were entirely outside of the right-hand fog line off the travel way; (3) that as Thiessen got about two hundred feet from the parked R&S vehicles, the workover rig started to turn left; (4) that Thiessen was going about 35 miles an hour when he saw the R&S workover rig starting to turn left; (5) that Thiessen saw the driver of the R&S crew pickup truck extend his left arm out the window; and (6) that Thiessen observed the left-hand-turn signal activated on the crew truck before the collision. Id., pp. 165-166.

Trooper Parkin did check the left-hand turn signal on R&S workover rig and noted that it was operable and visible from a distance of 500 feet, in compliance with law. Id., p. 169.

At trial, Trooper Parkin testified that Eric Rouse, the driver of the R&S workover rig, told the trooper that he was that approximately one-third of the rig was across the fog line. Id., p. 158. On cross, Trooper Parkin conceded that this fact was not recorded in his report, which mentioned only that Rouse made a move to the right side of the lane to make a wide turn. Id., p. 166.

<u>Argument</u>

Given the foregoing testimony, the jury's finding of 80% fault on the part of R&S is clearly, decidedly and overwhelming contrary to the great weight of the evidence. Simply put, there was no evidence upon which the jury could have made such an apportionment of fault. Several options are available to the Court:

1. Vacate the verdict and the judgment thereon and hold a new trial.

2. Alter the judgment to remove the award to Thiessen on the grounds that he did not carry his burden of proof with respect to his counterclaim.

3. Remove the award to Thiessen and grant judgment to R&S in the amount of its stipulated property damage ($204,650.56) and its uncontested lost profit claim ($29, 208.29).

DATED this 19th day of August, 2010.

R&S WELL SERVICE, INC., and
MARKEL INSURANCE COMPANY,
Plaintiffs/Counter-defendants,

By_____/s/_____
MARK W. GIFFORD
243 South Park Street
P.O. Box 2508
Casper, Wyoming 82602
(307) 265-3265
(307) 265-3266 (fax)
mark@giffordbrinkerhoff.com

Certificate of Service

      I hereby certify that a true and correct copy of the above and foregoing document has been *e-filed* and thereby electronically served, and a hard copy served by United States mail, first class postage prepaid, to Heather A. Zadina, Murane & Bostwick, 508 West 27th Street, Cheyenne, Wyoming 82001-3031, this 19th day of August, 2010.

                                            /s/
                                   Mark W. Gifford