MURANE & BOSTWICK
508 WEST 27TH STREET
CHEYENNE, WYOMING 82001
(307) 634-7500
FAX: (307) 638-7882

Heather A. Zadina

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| R&S WELL SERVICE, INC., a Wyoming Corporation, and MARKEL INSURANCE COMPANY, a Virginia Corporation ) ) ) ) Plaintiffs/Counter-defendants ) ) -vs- ) ) BRIAN THIESSEN, individually, ) ) Defendant/Counter-plaintiff ) | Case No.: 09 CV 72 |

## DEFENDANT/COUNTER-PLAINTIFF BRIAN THIESSEN'S RESPONSE TO PLAINTIFF/COUNTER-DEFENDANT'S MOTION FOR NEW TRIAL OR TO ALTER OR AMEND JUDGMENT

Defendant Brian Thiessen responds, thorough counsel, to Plaintiff's Motion for New Trial or to Alter or Amend Judgment, as follows:

This case simply came down to a matter of which witnesses the jury found more credible and which version of events they believed – in this case, the jury clearly believed the evidence presented by Mr. Thiessen over that offered by Plaintiffs. Plaintiffs are now requesting that the Court usurp the role of the jury and amend or "cancel" the jury's verdict basically because they believe their witnesses should have been viewed more favorably.

The significance and importance of a jury to the judicial system is grounded in our Constitutional notions of fairness and justice. That the verdict of a jury is entitled to great deference is clear in Tenth Circuit case law. The Tenth Circuit case law is replete with decisions to this effect. If "a new trial motion asserts that the jury verdict

MURANE & BOSTWICK
508 WEST 27TH STREET
CHEYENNE, WYOMING 82001
(307) 634-7500
FAX: (307) 638-7882

is not supported by the evidence, **the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence.**" *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir. 1999)(Emphasis added). "The jury has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1226 (10th Cir. 2000) (quotation omitted). "[U]nder the Seventh Amendment, the court may not substitute its judgment of the facts for that of the jury; it may only grant a new trial if it concludes that the jury's verdict was so against the weight of the evidence as to be unsupportable." *Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439, 1443 (10th Cir. 1988). "In reviewing a jury's award of damages, the court should sustain the award unless it is clearly erroneous or there is no evidence to support the award." *Brown v. Presbyterian Healthcare Services*, 101 F.3d 1324, 1330 (10th Cir. 1996) *Citing, Hudson v. Smith*, 618 F.2d 642, 646 (10th Cir. 1980).

In the instant case, the jury – having heard all of the evidence presented in trial and having deliberated until a unanimous verdict was reached – found in favor of Defendant Brian Thiessen and against Plaintiffs. Their verdict is, therefore, entitled to be upheld unless it can be proven that their verdict was "decidedly or overwhelmingly against the weight of the evidence." That Plaintiff is unhappy or disagrees with the verdict or that a different apportionment could have theoretically been made, does not mean that the evidence did not support the verdict. In fact, the Tenth Circuit has set

**MURANE & BOSTWICK**
508 WEST 27TH STREET
CHEYENNE, WYOMING 82001
(307) 634-7500
FAX: (307) 638-7882

forth only three circumstances in which granting a motion under Rule 59(e) may be warranted: "(1) there has been an intervening change in the controlling law; (2) there is newly discovered evidence which was previously unavailable; or (3) it is necessary to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000).

In the present case, there has been no "intervening change in the controlling law," nor is there any "newly discovered evidence which was previously unavailable;" therefore, the only way Plaintiff's Motion may be granted is if it would be necessary to "correct clear error or prevent manifest injustice." *Id.* Plaintiffs have not made such a showing. Instead, Plaintiffs have offered snippets of trial transcript which, at best, may only indicate that there was a question of fact and that reasonable minds could have apportioned the fault somewhat differently. This does not meet the standard required for Plaintiffs' motion to be granted. Moreover, Plaintiffs neglected to explain how, in light of the many inconsistencies in the testimony of their witnesses, the jury's verdict could have been "clear error." In response to Plaintiffs selection of trial testimony, Defendant submits the following examples of the trial testimony which support the jury's verdict:

1. In support of its Motion and its case, Plaintiff offered the testimony of Aaron Wolfe and Eric Rouse. Mr. Wolfe testified that the R&S workover rig slowed and put on its turn signal, but did not pull to the right before beginning to turn left. *Tr. Vol. 1(b), p.26.* Mr. Wolfe also testified, however, that at the time of the accident and the moments prior: 1) he was sitting in the back seat talking to his trainer, Dan

3

MURANE & BOSTWICK
508 WEST 27TH STREET
CHEYENNE, WYOMING 82001
(307) 634-7500
FAX: (307) 638-7882

Edelman, who was sitting in the front passenger seat, catty-corner from him; 2) he didn't know whether the vehicle he was sitting in had stopped or slowed down; 3) he didn't know whether the workover rig had stopped or slowed down; 4) he didn't know whether either Mr. Thiessen's vehicle took any evasive maneuvers; 5) he didn't know whether the workover rig took any evasive maneuvers; 6) he didn't know whether either vehicle veered in any direction prior to the collision; 7) he didn't know whether either vehicle had put on their brakes; and 8) he didn't know whether the vehicle he was sitting in had its turn signal on. *Id. pg. 30-36.* Based on the vast volume of information that Mr. Wright, a current employee of Plaintiff R&S Well Service, did not know – including information pertaining to *the vehicle he was sitting in at the time*, that the jury may have discredited his testimony was entirely within their purview and not unreasonable.

  2. Mr. Rouse testified that he did not pull off to the right before attempting to turn left. *Tr. Vol. II, p. 118.* Inconsistently, however, Mr. Rouse also testified that he talked "quite a bit" to Trooper Parkin at the scene of the accident and truthfully told him what had happened, including that he "could have" told trooper Parkin that he had pulled over to the right of the highway prior to the accident. That it was three years ago and he couldn't remember what he told him. *Id. p. 117; 128-130.* As a result of this inconsistency, it is not unreasonable for a jury to have believed that Mr. Rouse did, indeed, pull over to the right prior to turning and that his memory at trial – nearly three years later – was flawed or unreliable.

4

MURANE & BOSTWICK
508 WEST 27TH STREET
CHEYENNE, WYOMING 82001
(307) 634-7500
FAX: (307) 638-7882

Another inconsistency in Mr. Rouse's testimony is with regard to whether or not he paid attention to oncoming traffic prior to attempting the turn. Although Mr. Rouse testified that he had looked to see if there was any oncoming traffic in the southbound lane before turning, on cross examination, testified as follows:

> Q: And you didn't look to see if any oncoming traffic was coming in the southbound lane before you began to turn, did you?
> A. Yes, I did.
> Q. And if you had -- but if you had, you would have seen Brian Thiessen's bright-green semi truck with its headlights on approaching, wouldn't you?
> A. Yes, I -- it depends on where he was at. I mean, if he -- at the time of the -- when I looked behind me in my mirror, if he wasn't there -- you can't see directly behind the rig. I mean, vehicles have to be back a little ways before you can see them. So unless he got right up on me as close as he could and then turned out around, no, I did not see him.
> Q. But he couldn't have done that, could he, because you had the crew truck and the trailer behind you --
> A. Correct.
> Q. -- isn't that correct?
> A. Yes.
> Q. And yesterday Mr. Wolfe testified that the crew truck and trailer that they try and maintain two to three trailer lengths or truck lengths between the rig and the crew truck. Correct?
> A. Correct, when we're traveling.
> Q. And so there is no way that Mr. Thiessen could have been right up on your tail.
> A. When we're making a turn, they'll get closer. When we're traveling down the road, they stay a distance, a distance back.

*Id.* pg. *127 -128.*

The several inconsistencies in Mr. Rouse's testimony with regard to his actions, coupled with his admittance that he could have told the trooper that he had pulled over, support the jury apparently discrediting of Mr. Rouse's testimony and the resulting verdict.

5

MURANE & BOSTWICK
508 WEST 27TH STREET
CHEYENNE, WYOMING 82001
(307) 634-7500
FAX: (307) 638-7882

3.  Furthermore and to confirm Mr. Rouse's "could have," Trooper Parkin testified that Mr. Rouse told him at the scene of the accident, that he had pulled to the right before attempting the left hand turn. *Tr. Vol. II, pg. 156-158.* Whether Trooper Parkin's investigation of the accident was technically in accordance with Highway Patrol protocol or whether his spray paint was frozen is immaterial to the issue of his recollection of his conversation with Rouse and the facts stated in his report with regard to Mr. Rouse's location prior to the accident.

4.  Although there was some question about exactly how far off of the roadway the R&S vehicles were prior to the turn, the above testimony supports the testimony of Defendant Brian Thiessen, who testified repeatedly that the R&S vehicles were off on the side of the roadway. *See, e.g., Tr. Vol. 1(b), pg. 44-45; 47; 54-55.* Moreover, with regard to Plaintiffs' arguments concerning Mr. Thiessen's inability to accurately gauge distances which occurred during a span of seconds over three years ago, the Defendant points out additional testimony from Mr. Thiessen on that subject:

> Q. Now, yesterday and this morning you were asked a lot of questions having to do with distances and measurements and --
> A. Correct.
> Q. -- that sort of thing and asked to do calculations. We are going to take the opportunity to break that down a little bit so that we're clear. This accident was when?
> A. Pardon me?
> Q. When was this accident?
> A. Uh, November the 9th.
> Q. Of?
> A. 2008.
> Q. 2007?
> A. 2007.

6

MURANE & BOSTWICK
508 WEST 27TH STREET
CHEYENNE, WYOMING 82001
(307) 634-7500
FAX: (307) 638-7882

> Q. Okay.
> A. Yeah. We're going on the third year.
> Q. Okay. So it's just --
> A. Correct, 2007.
> Q. After the accident while you were still at the accident scene did you take any measurements?
> A. No, I didn't.
> Q. Have you ever been back to the accident scene and taken any measurements since?
> A. No, I haven't.
> Q. Okay. So Mr. Gifford mentioned and referred to several times this half a mile back that you testified that you could see the R&S vehicles. How do you know it was a half a mile?
> A. I don't. That's an educated approximation on my part.
> Q. Okay. And I believe you also testified that the R&S vehicles when you noticed that they appeared to be stopped is about two to 300 feet. Is that correct?
> A. Correct.
> Q. And how did you arrive at that measurement?
> A. I estimated.
> Q. Did --
> A. That was to the best of my ability at the, at the time when I gave my statement.
> Q. Okay. And that was the statement that you gave last summer?
> A. Correct.

*Id.* 79-80.

That the jury did not expect Mr. Thiessen to be an accident reconstructionist or his estimates concerning an accident which occurred three years ago to be accurate, does not indicate that the entirety of the evidence presented to and considered by the jury did not support their verdict.

## CONCLUSION

There is more than sufficient evidence to support the jury's verdict and their apportionment of fault and the Plaintiffs' Motion should be denied. In fact, that the jury apportioned fault between the two parties is a further indication that they carefully

7

**MURANE & BOSTWICK**
508 WEST 27TH STREET
CHEYENNE, WYOMING 82001
(307) 634-7500
FAX: (307) 638-7882

considered all of the evidence and thoughtfully arrived at a just verdict. "The factual resolution of the degrees of negligence and contributory negligence belong to the province of the jury, not the court." *Ruhs v. Pacific Power & Light,* 671 F.2d 1268, 1272 10th Cir. 1982)(Overruled on other grounds).

Dated this 20th day of August, 2010.

By: _____
Heather A. Zadina, # 6-4054
Murane & Bostwick, LLC
508 West 27th Street
Cheyenne, Wyoming 82001-3031
Phone: (307) 634-7500
Fax: (307) 638-7882
E-mail: haz@murane.com
*Attorneys for Defendant*

8

**MURANE & BOSTWICK**
508 WEST 27TH STREET
CHEYENNE, WYOMING 82001
(307) 634-7500
FAX: (307) 638-7882

**CERTIFICATE OF SERVICE**

This is to certify that on this 10th day of August, 2010, a true and correct copy of the foregoing **DEFENDANT/COUNTER-PLAINTIFF BRIAN THIESSEN'S RESPONSE TO PLAINTIFF/COUNTER-DEFENDANT'S MOTION FOR NEW TRIAL OR TO ALTER OR AMEND JUDGMENT,** was served electronically upon the following:

Mark W. Gifford
Gifford & Brinkerhoff
243 South Park Street
P.O. Box 2508
Casper, Wyoming 82602
mark@giffordbrinkerhoff.com
*Attorneys for Plaintiffs*


Julie Tiedeken
Brian Hunter
McKellar, Tiedeken, & Scoggin, LLC
702 Randall Avenue
P.O. Box 748
Cheyenne, Wyoming 82003
jtiedeken@mtslegal.net
bhunter@mtslegal.net
*Attorneys for Counter-Defendant R&S Well*

9